The CITY OF NEW YORK, Plaintiff,

v.

WATERFRONT AIRWAYS, INC., etc.,
Defendants.   Action # 1

Carol TOOLAN, as Executrix of the
Estate of John E. Toolan, Jr.,
Deceased, Plaintiff,

v.

The CITY OF NEW YORK,
Defendant.   Action # 2

Carol TOOLAN, as Executrix of the
Estate of John E. Toolan, Jr.,
Deceased, Plaintiff,

v.

WATERFRONT AIRWAYS, INC., and
AMW Corp., Defendants.   Action # 3

Eileen McCARTHY, Plaintiff,

v.

The CITY OF NEW YORK,
Defendant.   Action # 4

Eileen McCARTHY, Plaintiff,

v.

WATERFRONT AIRWAYS, INC., and
AMW Corp., Defendants.   Action # 5

Joseph C. STAMLER and Susan K.
Stamler, Plaintiffs,

v.

The CITY OF NEW YORK,
Defendant.   Action # 6

Joseph C. STAMLER and Susan K.
Stamler, Plaintiffs,

v.

WATERFRONT AIRWAYS, INC., and
AMW Corp., Defendants.   Action # 7

AMW CORP., a Corporation of New
Jersey, Plaintiff,

v.

The CITY OF NEW YORK,
Defendant.   Action # 8

Nos. 83 Civ. 6150 (KTD), 83 Civ. 7574
(KTD), 83 Civ. 7798 (KTD), 83 Civ. 7727
(KTD), 83 Civ. 7799 (KTD), 83 Civ. 7728
(KTD), 85 Civ. 7800 (KTD) and 83 Civ.
7509 (KTD).

Kreindler & Kreindler, New York City, for plaintiffs Toolan, McCarthy and Stamler; Milton G. Sincoff, of counsel.

Gallagher & Sullivan, Mineola, N.Y., for defendants Waterfront Airways, Inc. and AMW Corp.; James A. Gallagher Jr., of counsel.

Roger Milch and Donald R. Heiner, White Plains, N.Y., for plaintiff AMW Corp.; Donald Heiner, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendant City of New York; Daniel A. Tufo, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This case arises from a collision between a Cessna Floatplane (the "Floatplane"), owned by AMW Corp. ("AMW") and operated by Waterfront Airways, Inc. ("Waterfront") as an air taxi between New Jersey and Wall Street, and a New York City Police Department Bell 206A Helicopter (the "Helicopter"). The Floatplane had begun its approach from Brooklyn airspace to its landing site in the Wall Street area when it collided in the vicinity of the Brooklyn Battery Tunnel with the Helicopter which was on routine traffic patrol over Brooklyn, New York. The Helicopter crashed into an unoccupied building in Brooklyn and both passengers (a police officer pilot and an observer) died. Wrongful death claims concerning these passengers are currently pending in state court. The Floatplane continued momentarily in its line of flight and then crashed into the East River. The pilot, David Huber Bowen, and a passenger, John Toolan, who was seated next to Mr. Bowen, each apparently lost consciousness during the crash and subsequently drowned. The passengers seated in the rear of the Floatplane, Joseph C. Stamler and Eileen McCarthy, were able to exit the Floatplane before it sank and were rescued by the Coast Guard. Thereafter, a multiplicity of lawsuits were commenced in both the federal and state courts. The first action was commenced by the City of New York (the "City") against Waterfront. In the second, fourth, and sixth actions,[1] Toolan, McCarthy, and the Stamlers, alleging diversity jurisdiction, sued the City for personal injuries and, in the case of Toolan, wrongful death. These same individuals also commenced actions numbered three, five, and seven against Waterfront and AMW with subject matter jurisdiction predicated on admiralty jurisdiction.[2]

---

1. Refer to the caption for the numbering of the actions.

2. Diversity jurisdiction does not exist in actions three, five, or seven because all of the parties

The City has moved (1) to dismiss the second, fourth, and sixth causes of action for failure to join indispensable parties, (2) to dismiss the third, fifth, and seventh causes of action for lack of admiralty jurisdiction, (3) to dismiss all causes of action on the basis of *forum non conveniens*, (4) to consolidate all actions in the event its motions to dismiss are denied, and (5) to implead Waterfront, AMW and Susan Kinter Bowen,[3] as third-party defendants should the dismissal motions be denied. Each of the City's motions will be addressed separately.

(1) *Motion To Dismiss For Failure To Join Indispensable Parties*

■ The City has moved to dismiss the second, fourth, and sixth causes of action alleging that Waterfront and AMW are indispensable parties who have not been joined. Rule 19(a) of the Fed.R.Civ.P. requires:

> A person ... whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The City has failed to show how the specific conditions of Rule 19(a) are met. Indeed, it appears that the City, Waterfront, and AMW are, at best, joint tortfeasors, jointly and severally liable for plaintiff's injuries.

Joint tortfeasors, however, are not indispensable parties, but merely permissive parties. Fed.R.Civ.P. 19 advisory committee note; *Picard v. Wall Street Discount Corp.*, 526 F.Supp. 1248, 1252 (S.D.N.Y. 1981); *Kerr v. Compagnie De Ultramar*, 250 F.2d 860, 863 (2d Cir.1953). The reasons for this general rule are that joint and several liability permits the plaintiff to recover full relief from any one of the responsible parties, which party then has the option of suing for contribution or indemnity. Thus, there is no legitimate fear of multiple obligations. 3A Moore's Federal Practice ¶ 19.07–1[2.–2] (2d ed. 1985). Complete relief can be accorded among those already parties and the City may perhaps be entitled to recover in a later action any contribution or indemnity due it from Waterfront and/or AMW. Thus, the City's motion to dismiss for failure to join an indispensable party is denied.

(2) *Admiralty Jurisdiction*

■ Plaintiff passengers claim admiralty jurisdiction under 28 U.S.C. § 1333(1)[4] for their causes of action against defendants Waterfront and AMW. The City, which is not a party to these lawsuits, moves to dismiss. Because this is a challenge to the court's subject matter jurisdiction, Fed.R.Civ.P. 12(h)(3) permits it to be brought to the court's attention by persons other than the parties to the action.

In *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court established a two prong test for determining the existence of admiralty jurisdiction. The test requires that the alleged tort (1) have a maritime locale, and (2) "a significant relationship to traditional maritime activity." *Executive Jet* at 268, 93 S.Ct. at

---

involved in these actions are citizens of New Jersey.

3. Susan Kinter Bowen, sued the City as Administratrix of her husband's estate. David Haber Bowen was the pilot of the Floatplane and died in the collision. This action has been settled and is therefore no longer involved in these proceedings.

4. 28 U.S.C. § 1333(1) reads in pertinent part:
   The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
   (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

504. For a tort to have a maritime locale it must have occurred on navigable waters. *Executive Jet* at 253, 93 S.Ct. at 497. In the instant case, although the Floatplane eventually crashed into the East River, thus permitting plaintiffs to allege a maritime locale as the situs of the tort, the collision occurred over land, and the City Helicopter crashed into a building in Brooklyn. Thus, it is arguable that the tort did not even have a maritime locale. Assuming that it did, however, I find that the alleged tort does not have a significant connection with traditional maritime activity and thus does not meet the second part of the *Executive Jet* test.

The court in *Executive Jet* clearly indicated a narrow view of what aviation accidents should properly fall within a court's admiralty jurisdiction. "The matters with which admiralty is basically concerned have no conceivable bearing on the operation of aircraft, whether over land or water." *Executive Jet* at 270, 93 S.Ct. at 506. The Court further stated that:

> [a]lthough dangers of wind and wave faced by a plane that has crashed on navigable waters may be superficially similar to those encountered by a sinking ship, the plane's unexpected descent will almost invariably have been attributable to a cause unrelated to the sea—be it pilot error, defective design or manufacture of airframe or engine, error of a traffic controller at an airport, or some other cause; and the determination of liability will thus be based on factual and conceptual inquiries unfamiliar to the law of admiralty. It is clear, therefore, that neither the fact that a plane goes down on navigable waters nor the fact that the negligence "occurs" while a plane is flying over such waters is enough to create such a relationship to traditional maritime activity as to justify the invocation of admiralty jurisdiction.

*Id.* at 270–71, 93 S.Ct. at 505.

 The mere fact that a plane is a floatplane and thus equipped to make takeoffs and landings in water is insufficient, in and of itself, to be grounds for finding the existence of admiralty jurisdiction. *Executive Jet* requires a greater connection to navigation or commerce on navigable waters. *Id.* at 256, 93 S.Ct. at 498. The connection must be one within admiralty's area of particular competence. "[Admiralty] law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters.... It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." *Id.* at 270, 93 S.Ct. at 505.

This case involves an "air taxi" service in a floatplane across New Jersey territorial waters, which was to land and dock on the waters of the East River. Plaintiff passengers cite to several cases involving floatplanes where admiralty jurisdiction was held to be appropriate. These cases, however, are distinguishable from the present one. For example, in *Hark v. Antilles Airboats, Inc.*, 355 F.Supp. 683 (D.V.I. 1973), the court spent considerable time evaluating whether the crash of a floatplane into international waters during takeoff and before it was completely "airborne," fell within the court's admiralty jurisdiction. Basing its decision primarily upon findings that the navigational concerns of floatplanes during takeoffs and landings are similar to those of other water vessels, and because the flight was to occur over international waters, the court held that the accident was within the court's admiralty jurisdiction. In the instant case, the collision occurred after the Floatplane was airborne, and prior to its descent for landing, thus the navigational concerns associated with takeoffs and landings in water are simply not present. Nor does this case concern a flight over international waters on a route which could only occur by water or air. Plaintiff's reliance on the Supreme Court's decision in *Mobil Oil v. Higginbotham*, 436 U.S. 618, 619 n. 2, 98 S.Ct. 2010, 2012 n. 2, 56 L.Ed.2d 581 (1978) is also misplaced. The Supreme Court never even addressed the issue of whether the district court was correct in finding admiralty jurisdiction. Plaintiffs'

argument really appears to be based on the district court's holding in the case. The Western District Court of Louisiana held that a floatplane, flying workers across the Gulf of Mexico to an offshore oil rig, was performing the functions of a crewboat. *Higginbotham v. Mobil Oil Corp.*, 357 F.Supp. 1164, 1167 (W.D.La.1973). The factor most distinguishing *Higginbotham* from the instant case is that in *Higginbotham* water or air travel was apparently the exclusive means of accessing the oil rig. Between New Jersey and New York, however, water and air travel simply are not the exclusive means of access. Although at one time water vessels may have been used for travel between New York and New Jersey, water travel has now become the exception rather than the rule. For these reasons, this is simply not a case fitting within the special areas governed by the admiralty laws. Because I have determined that this case does not meet the test set forth in *Executive Jet*, plaintiff passengers' actions against Waterfront and AMW are dismissed for lack of subject matter jurisdiction.

■ Plaintiff passengers have also argued that in the event this court determines that admiralty jurisdiction is lacking, it should retain jurisdiction over their claims against Waterfront and AMW under the theory of pendent jurisdiction. Plaintiff passengers are suing for personal injuries and wrongful death which are tort claims governed by state law. Their only independent ground for claiming federal jurisdiction was in admiralty. As I have determined there is no admiralty jurisdiction over these claims and because plaintiff passengers' remaining actions against the City are based solely on diversity jurisdiction, the exercise of pendent jurisdiction would destroy the complete diversity of the parties. *See* 28 U.S.C. § 1332.

Pendent jurisdiction involves the trial of state law claims in federal court when there exists another ground for federal jurisdiction and all of the claims arose from a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Although the claims asserted against the City, Waterfront, and AMW arose from the same collision and therefore have a common nucleus of operative facts, pendent jurisdiction cannot be applied to defeat the statutory requirement of complete diversity of citizenship. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). Because plaintiff passengers and defendants Waterfront and AMW are all citizens of New Jersey and thus not diverse parties, the exercise of pendent jurisdiction would destroy complete diversity and is therefore inappropriate. *Aldinger v. Howard*, 427 U.S. 1, 14, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1975); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. at 377, 98 S.Ct. at 2404 (1978). Accordingly, the third, fifth, and seventh causes of action are dismissed.

### (3) *Forum Non Conveniens*

■ Defendant City has also moved to dismiss all of these actions on the basis of *forum non conveniens*. Because the City has moved to dismiss, rather than transfer the case, they are not moving pursuant to 28 U.S.C. § 1404, but are attempting to use the pre-statutory common law doctrine of *forum non conveniens*.

The City has failed to show any factor supporting its allegation that this court is an inconvenient forum. The cases it cites in support of its motion are inapposite. For example, in *Shields v. Mi Ryung Construction Co.*, 508 F.Supp. 891 (S.D.N.Y. 1981), the court did not dismiss the case, but merely transferred it from New York to Saudi Arabia. Additionally, in *DeMateos v. Texaco*, 562 F.2d 895 (3d Cir.1977), the court held dismissal from the District Court for the Eastern District of Pennsylvania was appropriate where the parties were Panamanian and Panamanian law would apply. In contrast, the City, in this case, is seeking a dismissal from the Southern District of New York, so that the cases can be tried in New York State Court.

Furthermore, the fact that the City waited until after the case was certified as ready for trial, and after conducting two years of discovery, although not control-

ling, weighs strongly against granting the City's motion. In sum, the City has not shown sufficiently compelling reasons to upset the plaintiffs' original choice of forum, and its motion to dismiss for *forum non conveniens* is denied.

### (4) *Consolidation*

■ The City has also moved pursuant to Rule 42(a) of the Fed.R. of Civ.P.[5] for an order consolidating the several suits which have arisen out of the collision at issue. None of the parties objects to a joint trial on the issue of liability. Plaintiffs, however, have requested separate trials on the issue of damages.[6] As I find that the evidence regarding liability and damages will be sufficiently different that bifurcated trials will best promote the resolution of this matter, a joint trial will be held on the issue of liability, and separate trials on damages.

### (5) *The City's Motion to Implead*

■ The City now seeks to implead, among others, Waterfront and AMW as third-party defendants pursuant to Fed.R. Civ.P. 14. As the City admits in its affidavit, the motion is not being made within the six month period required by Local Rule 3(k). Rule 3(b) permits the court to deny motions not brought within the required time. The City did not bother to make this motion until July of 1985 and I have not been presented with a legitimate reason for this substantial delay. Thus, I find that the circumstances presented here simply do not warrant a relaxation of the requirements of Rule 3(k). The City's motion to implead is denied.

Finally, the passenger plaintiffs are entitled to a jury trial in the cases still before me as admiralty law is not the basis for this court's subject matter jurisdiction.

**5.** Rule 42 reads in pertinent part:

    (a) Consolidation. When actions involving a common question of law of fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In sum, the City's motion to dismiss actions 1, 2, 4, and 6 for failure to join an indispensable party and its motion to dismiss all actions for *forum non conveniens* are denied; actions 3, 5, and 7 in which the City is not a party are dismissed for lack of subject matter jurisdiction; the City's motion to consolidate the actions into one joint trial on the question of liability is granted, however, there will be separate trials regarding damages; the City's request to implead Waterfront and AMW is denied; and the passenger plaintiffs are entitled to a jury trial. The City's motions to compel discovery are referred to Magistrate Buchwald. All other motions are denied as moot.

SO ORDERED.

**6.** Because actions 3, 5, and 7 (the passenger plaintiffs' suits against Waterfront and AMW) are being dismissed for lack of subject matter jurisdiction, that leaves only actions 1, 2, 4, 6, and 8 (the passenger plaintiffs' and AMW's suits against the City) to be consolidated in this trial. There is therefore, one wrongful death action, two personal injury suits, and two suits for property damage.