MARATHON INTERNATIONAL PE-TROLEUM SUPPLY CO., Plaintiff,

v.

I.T.I. SHIPPING, S.A., in personam, M/T Ruth M, her engines, tackle, apparel, etc., in rem, and Saybolt de Mexico, S.A., in personam, Defendants.

I.T.I. SHIPPING, S.A., and Saybolt de Mexico, S.A., in personam, Defendants and Third–Party Plaintiffs,

v.

PETROLEOS MEXICANOS, Third–Party Defendant.

No. 87 Civ. 3762 (RWS).

United States District Court, S.D. New York.

June 27, 1990.

Haight, Gardner, Poor & Havens, by Donald J. Kennedy, Paul E. O'Brien, of counsel, New York City, for plaintiff.

Walker & Corsa, by Leroy S. Corsa, Kirk M.H. Lyons, Nicholas Kalfa, of counsel, New York City, for defendants.

Curtis, Mallet–Prevost, Colt & Mosle, by Joseph D. Pizzurro, Michelle A. Rice, of

counsel, New York City, for third-party defendant.

## OPINION

SWEET, District Judge.

Defendant I.T.I. Shipping, S.A. ("I.T.I.") moves for reargument of this court's dismissal of its third-party complaint against Petroleos Mexicanos ("Pemex") under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Title 28 U.S.C. § 1605(a)(2) and, in the alternative, for an order dismissing the complaint of plaintiff Marathon International Petroleum Supply Company ("Marathon") under Rule 19 of the Federal Rules of Civil Procedure and for an extension of its time to appeal. For the reasons set forth below the motions to reargue and to dismiss for want of an indispensable party are denied and the motion for an extension of time to appeal is granted.

*Prior Proceedings*

The facts and proceedings of this case are set forth in detail in the January 16, 1990 opinion (the "opinion"), familiarity with which is assumed. 728 F.Supp. 1027. Oral argument was heard on the reargument on February 16, 1990 and on the Rule 19 motion on March 9, 1990. The motions were considered submitted as of the latter date. On February 22, 1990 I.T.I. filed a motion for an extension of time in which to file a Notice of Appeal pursuant to Rule 4(a), (5) of the Federal Rules of Appellate Procedure and on March 5, Pemex filed an opposition to that motion. This motion is also considered submitted as of March 9, 1990.

*Reargument of Direct Effect Under the FSIA*

I.T.I. moves for reargument on the basis that the court overlooked relevant case law when in fact I.T.I. has abandoned its original theory of jurisdiction and has recast its entire argument to try now another method for obtaining jurisdiction. I.T.I. has dropped its initial claim that the court must evaluate I.T.I.'s jurisdiction in light of Rule 14(c) and thus Marathon's jurisdiction to adjudicate and now contends that I.T.I. has jurisdiction to adjudicate be-

cause of the "direct financial loss" I.T.I. will suffer by dint of its having to engage in litigation and risk potential monetary exposure in the United States. Notwithstanding the impropriety of using reargument to switch one's theory of the case, I.T.I.'s new assertion is equally unpersuasive.

I.T.I.'s position that the activity of a foreign sovereign which caused "foreseeable financial consequences" lends jurisdiction is based on the reversed lower court decision in *International Housing Ltd. v. Rafidain Bank Iraq*, 712 F.Supp. 1112 (S.D.N.Y.1989), *rev'd*, 893 F.2d 8 (2d Cir.1989). Not only was the latest circuit opinion brought to the parties' attention and relied upon in the January opinion, but when applied to I.T.I.'s recast theory, it effectively bars I.T.I.'s claim. *See International Housing*, 893 F.2d at 11 (a financial injury to a foreign corporation does not constitute a direct effect in the United States *when losses in the underlying transaction occurred elsewhere* and method of transaction incidental to United States interests).

I.T.I. in its reply memorandum now concedes that whether the plaintiff is a foreign corporation is relevant to whether the financial loss constitutes a direct effect in the United States but concludes, contrary to the facts here, that the facts of *International Housing* did not allow for a finding of a direct financial loss. I.T.I.'s presence in an American court, however, is only a by-product of the underlying dispute over the commercial activity and thus is, at best, an indirect result of commercial activities conducted outside of the United States. As in *International Housing*, the foreign corporation's loss occurred outside of the United States, and thus there is no *direct* financial loss to the foreign corporation in the United States. *International Housing*, 893 F.2d at 11.

Furthermore, jurisdiction to adjudicate cannot hinge on Marathon's choice of forum in which to pursue I.T.I. If it did the meaning of "direct effect" as a test of jurisdiction to adjudicate would be dependent on the pure fortuity of where the plaintiff, in this case Marathon, chose to sue the

defendant/third-party plaintiff, I.T.I. I.T.I.'s assertion that monetary exposure resulting from litigation confers jurisdiction could be used by any foreign corporation defending a suit in the United States and thus would reduce the "direct effect" test to a tautology.

Finally, I.T.I. challenges the court's reliance on the arbitration clause through which Marathon "contracted away" recourse to an American court. I.T.I. concludes that because one clause of the contract says "may arbitrate" that the contract is optional and thereby relies on its Rule 14(c) bootstrapping argument that Marathon's jurisdiction would confer jurisdiction upon I.T.I. Not only does I.T.I. omit the very next paragraph which states that the parties *shall* arbitrate unless they expressly agree otherwise, but the Second Circuit has precluded this argument by holding that similar language is indeed mandatory and the exclusive remedy provided for in the agreement. *See Local 771, I.A.T.S.E. v. RKO General, Inc. WOR Div.*, 546 F.2d 1107, 1116 (2d Cir.1977).

The motion for reargument is denied.

*Rule 19*

■ Absent jurisdiction to adjudicate over Pemex, I.T.I. contends that the entire action should be dismissed under Rule 19 of the Federal Rules of Civil Procedure because Pemex's absence will preclude complete relief amongst the parties and I.T.I. will thereby be prejudiced in that it will be unable to seek indemnity or contribution in this action from the allegedly "principal tortfeasor and/or party at fault, Pemex" without retrying the action against Pemex in Mexico at great expense and waste of judicial economy.

Rule 19 of the Federal Rules of Civil Procedure provides for compulsory joinder of parties who are needed for just adjudication. Rule 19 entails a two-step inquiry. Rule 19(a) sets forth the standards for determining when a party should be joined if feasible. Therefore,

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

Only if a party is found to be indispensable and unable to be joined should a court reach the second part of the inquiry under Rule 19(b). *See Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, etc.*, 895 F.2d 116, 121 (3rd Cir.1990). The second step, if reached would require the court to determine whether in "equity and good conscience" the case should proceed in Pemex's absence and the court would consider (1) to what extent a judgment rendered in Pemex's absence might be prejudicial to Pemex or the present parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in Pemex's absence will be adequate; and (4) whether Marathon will have an adequate remedy if the action is dismissed for nonjoinder. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 737–39, 19 L.Ed.2d 936 (1968); Advisory Committee Note to Rule 19 of the Federal Rules of Civil Procedure.

Because Pemex has been dismissed for lack of jurisdiction to adjudicate under the FSIA, the threshold inquiry under the Rule 19 motion is whether Pemex is an indispensable party pursuant to Rule 19(a). According to the Second Circuit, subsection (a) of Rule 19 defines three categories of parties that should be joined if possible and if Pemex falls within one of these categories it must be termed an indispensable party. *See Arkwright–Boston Mfrs. Mut.*

*Ins. Co. v. New York*, 762 F.2d 205, 208 (2d Cir.1985); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.1983).

The first inquiry is whether in Pemex's absence "complete relief" can be had between Marathon and I.T.I.—the already existing parties, not as between the parties and the absent person whose joinder is sought. *See Arkwright–Boston*, 762 F.2d at 209 (quoting 3A *Moore's Federal Practice* ¶ 19.07–1[1], at 19–96 (2d ed. 1984)).

I.T.I. contends that the only evidence existing in this action as to the source of the alleged free water is that the water originated from Pemex's shore facility at Rabon Grande. By allegedly furnishing free water rather than Maya crude oil to Marathon, Pemex allegedly breached its crude oil supply contract with Marathon and/or was negligent with regard to its performance. I.T.I. contends that Pemex's breach has put I.T.I. in a position of having to defend the current lawsuit and that Pemex's absence from the suit would impair or impede Pemex's ability to protect Pemex's interest in not being found liable.

Marathon's claims however arise from the alleged negligence and breach of contract of I.T.I. under the bill of lading to load, care, handle and stow, the oil and Saybolt de Mexico's ("Saybolt") failure to detect the free water. Marathon has not proceeded against Pemex either for breach of contract or in tort. There exists two separate contracts, Marathon's with I.T.I. and Marathon's with Pemex.

Pemex is not an indispensable party because the court could conclude that there was a breach of contract or tort under Marathon's contract with I.T.I. without having to adjudicate the other party's, Pemex's, contractual obligations. Although Marathon's claim against Saybolt is in tort and its theory of the cases against I.T.I. lies primarily in contract, even if Pemex were a joint tortfeasor, it would not thereby be an indispensable party. *See City of New York v. Waterfront Airways, Inc.*, 620 F.Supp. 411 (D.C.N.Y.1985).

Had Pemex breached its contract with Marathon, I.T.I. is not a party to that contract, nor is Pemex a party to I.T.I.'s contract with Marathon, and therefore neither one is indispensable to the litigation of the other's contractual obligations because complete relief could be granted among the parties already joined. *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir.1983) ("A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract.") (citations omitted), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983). Because the causes of action Marathon has against I.T.I. and Saybolt are separate and distinct from any claims Marathon may have against Pemex, if, as I.T.I. alleges, all evidence of wrongdoing points to Pemex, then I.T.I. may defeat Marathon's claim without joining Pemex as a party. I.T.I.'s desire to seek indemnification from Pemex does not make Pemex an indispensable party. *See United Engineers & Constr. v. Research–Cottrell*, 100 F.R.D. 27, 29 (E.D.Pa.1983) (desire to assert claim for contributions and indemnity does not require joinder under Rule 19).

The second criterion for determining whether the party is indispensable is also not met here. Because subparts (i) and (ii) are contingent upon the initial requirement that Pemex claims a legally protected interest relating to the subject matter of the action, *Northrop Corp.*, 705 F.2d at 1043–44, absent a formal interest in the subject matter of the action, Pemex cannot be said to fall within the necessary test. *Id.*

Pemex has no interest in I.T.I.'s litigation with Marathon. Whether I.T.I. breached it duties to Marathon under a contract or tort theory is not relevant to Pemex and would not bear on whether Pemex also breached its obligations under a contract or tort theory.

Even if Pemex had an interest relating to the subject matter of this dispute, Pemex's interest relating to the subject of the action is not such that "as a practical matter" the proceeding here will impair or impede's its ability to protect its interests under subpart (i). Pemex could certainly make known its interests in any arbitration should Marathon decide to proceed against

Pemex and could just as easily make known its interests in any subsequent litigation between I.T.I. and Pemex. I.T.I.'s assertion that Pemex will be prejudiced by a preclusive effect of issues litigated in this forum by Pemex's failure to respond to I.T.I.'s voucher and to assume a defense in this action against I.T.I. is unavailing. Because Pemex could not be joined, in determining the preclusive effect of an ignored vouching-in notice the court adjudicating any subsequent action for indemnification between I.T.I. and Pemex will have to look at whether I.T.I. adequately protected Pemex's interests in the prior proceeding. *See SCAC Transport (USA) Inc., v. S.S. "Danaos",* 845 F.2d 1157, 1162 (2d Cir. 1988). I.T.I. forecloses such a result by its own posture in this litigation that Pemex is to blame for the lost Maya crude oil.

Additionally, under subpart (ii) there is no chance of inconsistent obligations. Although I.T.I.'s claims that failure to join Pemex will require I.T.I. to bring a second suit, the test under Rule 19(a) is whether proceeding without the absent party would present a threat of inconsistent obligations, not whether there may be multiple litigations. Accordingly, even if, as I.T.I. asserts, it will have to proceed against Pemex in another forum to seek indemnification, there is no danger that such proceedings will present inconsistent obligations when the question before this court concerns I.T.I.'s obligations with respect to Marathon and the alleged second proceeding would concern Pemex's obligations to I.T.I.

Pemex need not be a party for I.T.I. to prevail or for complete relief to be accorded among the parties and Pemex has asserted no interest in the outcome of the merits of Marathon's claim against I.T.I. Consequently, the Rule 19 motion is denied.

*Extension of Time to Appeal*

■■■ I.T.I.'s motion for an extension of time for filing a notice of appeal because the reargument of the dismissal of the third-party complaint was *sub judice* is denied. Where, as here, a party moves for an extension after the Rule 4(a)(1) period expires, the good cause standard is not applicable. *In re Cosmopolitan Aviation*

*Corp.,* 763 F.2d 507, 514 (2d Cir.1985), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). Under Rule 4(a)(5) of the Federal Rules of Appellate Procedure, a district court may extend the time for filing a notice of appeal, only upon a showing of excusable neglect. *Bortugno v. Metro–North Commuter R.R.,* 905 F.2d 674, 676 (2d Cir.1990) (excusable neglect "must be based either on acts of someone other than appellant ... or some extraordinary event").

Although this motion for extension comes only thirty-one days after the expiration of the time period prescribed, I.T.I.'s reasoning that a filing of appeal would be "a waste of judicial time and economy" would not even satisfy the good cause standard much less the more stringent standard of excusable neglect required under Fed.R.App.P. 4(a)(5) for requests for extensions filed after thirty days. *In re Cosmopolitan Aviation Corp.,* 763 F.2d at 514. I.T.I.'s reasoning not only presupposes success on the motion to reargue, but such reasoning would promote motions to reargue to avoid the jurisdictional time requirements for filing appeals.

Accordingly, the motion to reargue is denied as is the motion for dismissal under Rule 19. Extension for leave to appeal is denied for absence of excusable neglect or good cause shown, and pursuant to the letters of May 29 and 30, 1990, discovery shall be completed and the pre-trial order shall be submitted thirty days after this decision.

It is so ordered.