**BROADFIELD FINANCE, INC. and New York Forfaiting, Inc., Plaintiffs,**

v.

**MINISTRY OF FINANCE OF THE SLOVAK REPUBLIC, Petrimex, Ltd., Marian Mojzis, Ministry of the Economy of the ARAB Republic of Egypt and Central Bank of Egypt, Defendants.**

No. 99 CIV. 4061(JSR).

United States District Court, S.D. New York.

June 1, 2000.

Robert A. Giacovas, Lazare, Potter & Giacovas L.L.P., New York City, Thomas Hennessey, Bingham, Dana LLP, Boston, MA, for Plaintiffs.

Andrew W. Cohen, Squire, Sanders & Dempsey, Washington, DC, for Defendant Ministry of Finance of the Slovak Republic.

Jay Cohen, Holly D. Jarmul, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Defendants Ministry of the Economy of the Arab Republice of Egypt and Central Bank of Egypt.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Whether this Court has jurisdiction over the sovereign defendants here sued depends on application of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1604, to the relevant facts, which are as follows:

In 1984, the Government of Czechoslovakia agreed to lend up to $70 million to the Government of Egypt to help finance Egypt's purchase of various goods and services from Czechoslovakia. Thereafter, in 1993, when Czechoslovakia was divided into the Czech Republic and the Slovak Republic (or Slovakia), Czechoslovakia's rights to repayment of the amounts actually borrowed by Egypt were allocated between the two new nations. One of the rights assigned to Slovakia was the right to repayment of a $6 million installment that would come due in 1996 (the "1996 Installment").

In 1997, with the 1996 Installment overdue and still unpaid, the Ministry of Finance of the Slovak Republic (the "Slovak Ministry") entered into an agreement with Petrimex, Ltd., a Slovakian corporation, regarding this portion of the debt. According to plaintiffs, Petrimex purchased all of Slovakia's rights to the 1996 Install-

ment and then immediately assigned them over to plaintiff Broadfield Finance, Inc., a British Virgin Islands corporation with its principal place of business in London. *See* Giacovas Dec. Exs. 4, 5. In return, Broadfield Finance paid the Slovak Ministry approximately $3,100,000, which was deposited into a foreign currency account held by the National Bank of Slovakia at Citibank in New York for the benefit of the Slovak Ministry's account at the National Bank of Slovakia in Slovakia.[1] Subsequently, Broadfield Finance assigned a portion of its rights to the 1996 Installment to co-plaintiff New York Forfaiting, Inc, a New York corporation with its principal place of business in Florida.[2]

In March 1997, the Central Bank of Czechoslovakia, which had been appointed by the Slovak Ministry to administer the Egyptian debt, notified the Central Bank of Egypt that the 1996 Installment had been assigned to Petrimex and, subsequently, to Broadfield Finance. Broadfield Finance similarly notified the Central Bank of Egypt of the assignment and sent written demands for the monies owed pursuant to it. Giovacas Dec. Exs. 7–10. The Central Bank of Egypt, as well as the Ministry of the Economy of the Arab Republic of Egypt (the "Egyptian Ministry") responded that the debt was not assignable and hence no payment on the 1996 Installment would be made to anyone but Slovakia.

In July 1997, the Egyptian Ministry entered into an agreement to pay the Slovak Ministry approximately $7.35 million in settlement of any of Slovakia's rights to any portion of the outstanding debt, including the 1996 Installment. Part of this settlement was effected by transferring approximately $4.2 million from an account held by the Central Bank of Egypt in New York into the Citibank account in New York held by the National Bank of Slovakia, from where it was subsequently transferred to the Slovak Ministry's account at the National Bank of Slovakia in Slovakia.

Having already received approximately $3.6 million from Broadfield Finance in connection with the purported assignment of the 1996 Installment, the Slovak Ministry offered to refund this amount to the Egyptian Ministry. But the Egyptian Ministry, consistent with its earlier position that the assignment was invalid, refused, contending that the settlement embraced any and all obligations it might have to repay any portion of the debt owed at any time to Slovakia. Broadfield Finance and New York Forfaiting then brought this suit against the Slovak Ministry, Petrimex, the Egyptian Ministry, and the Central Bank of Egypt, alleging various claims of breach of contract, fraud, unjust enrichment, conversion, constructive trust, and tortious interference with contract.[3] The action, originally brought in New York Supreme Court, was removed to this Court on June 4, 1999.

Thereafter, all defendants except Petrimex moved to dismiss for lack of jurisdiction. Following briefing and oral argument the Court, on August 16, 1999, telephonically informed counsel that it intended to grant the motion and dismiss the moving defendants, but deferred issuing a final order pending receipt of further information regarding Petrimex that had previously been requested from

---

1. The National Bank of Slovakia's account at Citibank functions as a foreign currency exchange account, with payments being received in U.S. dollars and transferred in Slovak crowns to the Slovak Ministry's account in Slovakia.

2. Plaintiffs do not contend that New York Forfaiting's purchase from Broadfield Finance is of consequence for the purpose of determining jurisdiction under the FSIA.

3. A fifth named defendant, Marian Mojzis, the Director General of Petrimex, was never served. In a telephone conference on May 4, 2000, plaintiffs' counsel agreed with the Court that the claim against Mojzis should now be dismissed, pursuant to Fed.R.Civ.P. 4(m), for lack of service.

plaintiffs' counsel (see *infra*). No such information having been supplied, the Court now formally grants the motion, and dismisses the case as to all defendants (including Petrimex), for the following reasons:

■ As acknowledged instrumentalities of foreign sovereigns, the moving defendants, *i.e.*, the Slovak Ministry, the Egyptian Ministry, and the Central Bank of Egypt, are immune from suit in the United States unless the case falls within some exception recognized under the FSIA. The exception here invoked is that set forth in 28 U.S.C. § 1605(a)(2), to wit, a case "in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

While the moving defendants concede that they were engaged in commercial activity, *see* Egypt Mem. at 1; Slovak Mem. at 6, they deny that the commercial activities upon which the instant lawsuit is "based" had any relevant nexus to acts or activities that were performed in the United States or that caused a direct effect in the United States. The Court agrees.

■ Specifically, the only connection with the United States of the transactions described above were the transfers through the New York bank accounts. But none of these transfers bears a jurisdictionally relevant relationship to the causes of action here alleged. *See, e.g., Saudi Arabia v. Nelson,* 507 U.S. 349, 357, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993)("[a]lthough the Act contains no definition of the phrase 'based upon,' ... the phrase is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case"); *NYSA–ILA Pension Trust Fund v. Garuda Indonesia,* 7 F.3d 35, 38 (2d Cir.1993) (there must be "a significant nexus ... between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action"); *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1018 (2d Cir.1991)(element on which jurisdiction is alleged to be predicated must be "part of a commercial activity having substantial contact with the United States").

This is particularly obvious with respect to the claims asserted against the Egyptian Ministry and the Central Bank of Egypt, *i.e.*, breach of contract and tortious interference with contract. The alleged breach of contract occurred in Egypt in early 1997, when these defendants refused Broadfield's Finance's demand that it be paid the money owed on the 1996 Installment. Such refusal was independent of any of the bank transfers. Similarly, the alleged tortious interference with contract likewise occurred in early 1997 in Egypt, where the Egyptian Ministry and the Slovak Ministry, in negotiating a settlement of Egypt's outstanding debt obligation, allegedly thereby tortiously interfered with the Slovak Ministry's prior assignment of the 1996 Installment to Broadfield Finance. The relationship of the New York transfers to these events is tangential at best.

■ As for the claims made against the Slovak Ministry, plaintiffs have a somewhat stronger argument, for proof of such of these claims as breach of contract would require proof that Broadfield Finance paid the Slovak Ministry consideration for the assignment of the 1996 Installment, while proof of such other of these claims as unjust enrichment, conversion, and constructive trust would require proof that the Slovak Ministry received payment from the Egyptian Ministry in settlement of the debt it had already purported to assign to Broadfield Finance—and each of these payments was transferred through the New York accounts. However, the only reason these transfers occurred through the New York accounts was to take advantage of a useful medium of ex-

change, dollars, a fact irrelevant to the misconduct complained of. *See, e.g., International Housing Ltd. v. Rafidain Bank Iraq,* 893 F.2d 8, 10 (2d Cir.1989); *Shapiro,* 930 F.2d at 1018; *Garuda Indonesia,* 7 F.3d at 38. Accordingly, jurisdiction over the moving defendants does not lie under any of the exceptions here relied on by plaintiffs.

As for the remaining, non-sovereign defendant, Petrimex, by the time this lawsuit was transferred from state to federal court, that defendant, though it had previously answered the complaint, declined to further appear on the ground that it had filed for bankruptcy in Slovakia and that, under applicable Slovakian law, such filing precluded further action against Petrimex in this forum. At the initial pretrial conference before this Court, on June 21, 1999, the Court therefore directed plaintiffs to ascertain the legal status of the bankruptcy filing and advise the Court whether they would challenge Petrimex's contention and seek to proceed further against it here. Although plaintiffs were directed to inform the Court by no later than July 5, 1999 of their position in this regard, they failed to do so, then or thereafter. Indeed, over the course of the past few weeks, the Court has repeatedly reminded plaintiffs' counsel of this obligation (*see, e.g.,* telephone conferences of April 25, 2000 and May 4, 2000)—but to no avail. Accordingly, it must be inferred that, by their inaction, plaintiffs have effectively abandoned the prosecution of this suit against Petrimex.

For the foregoing reasons, the Clerk is directed to enter a final judgment dismissing the complaint as to Marian Mojzis for lack of service, as to Petrimex, Ltd. for plaintiffs' abandonment of prosecution of the suit, and as to all other defendants for lack of jurisdiction. Clerk to enter judgment.

SO ORDERED.