OPINION OF THE COURT
Meyer, J.
An entity otherwise entitled to sovereign immunity under the Foreign Sovereign Immunities Act (28 USC § 1602 ff; hereafter FSIA) which serves an answer asserting not only a number of affirmative defenses other than sovereign immunity but also a counterclaim against plaintiffs and their counsel, and in furtherance of its position utilizes a number of procedural devices before attempting some four and a half years after commencement of the litigation to amend its answer to assert the immunity defense, waives immunity and the grant of permission to serve an amended answer including such a defense does not preclude a finding on the merits that the defense has been waived. The order of the Appellate Division should, therefore, be affirmed.
I
These appeals involve actions brought to recover from Singapore Airlines and Gulf Aviation for injuries resulting from the 1976 hijacking of an Air France plane en route to Paris from Tel Aviv. Plaintiffs allege that the failure of defendant airlines to search the hijackers at the points of origin of their connecting flights made it possible for them to board the Air France plane without detection. It is undisputed that defendant airlines are foreign government instrumentalities and as such entitled to sovereign immunity unless within the exceptions to immunity from jurisdiction stated in 28 USC § 1605 (a) (1) or (a) (2).
The summons and complaint in the Aboujdid action[1] were *455 served on or about June 23, 1978. On July 27, 1978, Gulf served its answer, which contained affirmative defenses of failure to state a cause of action, lack of capacity of plaintiffs, forum non conveniens and improper venue, but made no reference to sovereign immunity. It also stated a counterclaim for prima facie tort not only against the plaintiffs but also against their attorneys of record, alleging that commencement of the action was wrongful and seeking compensatory damages of $1,000,000 and punitive damages of $5,000,000. On August 9, 1978, however, Gulf discontinued the counterclaim against the attorneys of record and on August 14, 1978 filed an amended counterclaim against plaintiffs only.
On application of plaintiffs, further proceedings in the action were stayed on November 6, 1978 pending determination of a related Illinois action. The Illinois action was dismissed on forum non conveniens grounds in December 1978 (People ex rel. Compagnie Nationale Air France v Giliberto, 74 Ill 2d 90, 383 NE2d 977) and certiorari was denied by the Supreme Court on April 4, 1979 (441 US 932). Singapore Airlines then moved prior to service of its answer to dismiss on grounds of forum non conveniens and Gulf joined in that motion. The motion was denied on December 31, 1980 (108 Misc 2d 175). Defendants moved for reargument, defendant Singapore’s papers noting that it had not yet filed an answer and if required to answer that it may have a defense of sovereign immunity. On May 13, 1981, reargument was granted but the original decision adhered to,[2] the memorandum characterizing the suggestion of sovereign immunity as without merit. Singapore’s answer, verified June 5, 1981, was then filed. On January 26, 1982, the order denying the original motion was affirmed (86 AD2d 564).
On July 14, 1982, Gulf removed the actions to the United States District Court and at an unspecified time in 1983 moved in that court to amend its answer to assert the defense of sovereign immunity and to dismiss the action for lack of jurisdiction. Singapore moved to dismiss on the same ground. On plaintiffs’ motion for remand, however, removal was held untimely and the actions were, by order dated March 21, 1983, remanded to Supreme Court, New York County, the District Court Judge declining to consider defendants’ motions *456 in view of the remand. By motions returnable July 22, 1983, Gulf moved in Supreme Court for leave to amend its answer and to dismiss on the ground of sovereign immunity and Singapore moved to dismiss on the same ground.
Gulfs motion for leave to amend was granted, the court noting that plaintiffs’ argument in opposition that Gulf may have waived its sovereign immunity was well taken, that the "defendants have clearly waived their claims of immunity by litigating over these many years” but that plaintiffs’ assertion of prejudice with respect to Gulfs motion to amend was unjustified in view of the fact that Singapore’s answer already contained a defense of sovereign immunity. It also held both defendants within the commercial activity and direct effects exceptions of 28 USC § 1605 (a) (2) and, therefore, denied both motions to dismiss. On appeal to the Appellate Division, that court held "that Gulf Aviation must be deemed to have waived the defense of sovereign immunity by not having raised it in its first responsive pleading” (108 AD2d, at p 332), but that neither of the 28 USC § 1605 (a) (2) exceptions was applicable to either defendant, and that Singapore had properly preserved the defense by raising it in its answer. It, therefore, modified, on the law, to dismiss the complaint as to Singapore and otherwise affirmed.
The matter is before us on appeal by plaintiffs on modification grounds under CPLR former 5601 (a) and on appeal by Gulf pursuant to leave granted by the Appellate Division. We agree that, for the reasons stated in the opinion of Justice J. Robert Lynch (108 AD2d 330), the commercial activity and direct effect . exceptions of 28 USC § 1605 (a) (2) are not applicable to either airline, that neither airline had explicitly waived immunity within the meaning of section 1605 (a) (1), and that Singapore Airlines, having set forth in its answer an affirmative defense that the action was barred by the FSIA, did not implicitly waive immunity. We also agree, although on somewhat different reasoning, that Gulf did implicitly waive its immunity. We, therefore, affirm and answer the question certified by the Appellate Division on Gulfs appeal in the affirmative.
II
Our disagreement with the Appellate Division’s reasoning as to Gulf lies in its single-minded reliance on Gulfs first responsive pleading as the basis for its finding of waiver. The *457 act provides in section 1602 that "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter,” in section 1604 that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter”, and in section 1605 (a) that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.”[3] Notwithstanding the reference in the House Report to the filing of "a responsive pleading in an action without raising the defense of sovereign immunity”,[4] we do not find it necessary to pass upon whether under all circumstances the omission of the defense from the first responsive pleading constitutes an irrevocable waiver. Under the circumstances of this case and the interpretation of the act as it has developed in the Federal courts,[5] we conclude, rather, that, notwithstanding its grant of permission to serve an amended answer, Special Term acted within its discretion in concluding that Gulf by its prior actions in the litigation had waived immunity.[6]
That "courts have discretion to determine that the conduct *458 of a party in litigation does constitute a waiver of foreign sovereign immunity in light of the circumstances of a particular case” is the holding of Canadian Overseas Ores v Compania de Acero del Pacifico (727 F2d 274, 278). And in Frolova v Union of Soviet Socialist Republics (761 F2d 370, 378), the court, noting that "Congress anticipated, at a minimum, that waiver would not be found absent a conscious decision to take part in the litigation,” recognized "a reticence [in the case law] to find a waiver from the nature of a foreign state’s participation in litigation” even when a substantial period of time has passed.
There is language in some of the cases to the effect that failure to assert the defense in an answer or other responsive pleading is an implied waiver (e.g., Canadian Overseas Ores v Compania de Acero del Pacifico, 727 F2d, at p 277, supra; Sea Lift v Refinadora Costarricense de Petroleo, 601 F Supp 457, 466).[7] The holding in Canadian Overseas was, however, that the making of motions for a stay and for dismissal on forum non conveniens grounds and the participation in court-ordered discovery, all of which stretched over a period of several years, was not an implied waiver by a foreign entity which had filed no responsive pleading and had expressly noted in opposing a motion for remand to the State court that it did not intend to waive its right to raise the defense. And although a responsive pleading without such a defense had been served in the Sea Lift case (supra), the court also relied on the fact that defendant, an agency of the government of Costa Rica, had made several motions to dismiss without mentioning an intention to assert sovereign immunity and had argued that the courts of Costa Rica had jurisdiction of the parties and the subject matter.
Also of interest in this connection are Matter of Rio Grande Transp. (516 F Supp 1155, 1158) and Wolf v Banco Nacional (739 F2d 1458, 1460, cert denied — US —, 105 S Ct 784). Rio Grande held that the assertion of a counterclaim did not constitute an implied waiver when the counterclaim was made conditional upon the finding of subject matter jurisdiction. *459 Wolf, on the other hand, recognized that an implied waiver could be found from counsel’s failure to suggest sovereign immunity as a basis for summary judgment in favor of the bank, which had been nationalized two days before the summary judgment motion was argued.
Viewed in the context of those decisions there can be little question that Gulf consciously decided to take part in the litigation. Not only did its answer set forth the four affirmative defenses noted above, without attempting in any way to reserve the right to plead sovereign immunity, but also it asserted the counterclaim described above against both plaintiffs and their attorneys, who were not parties to the lawsuit.[8] Not until almost five years had passed did Gulf move in Federal court for leave to amend its answer, and, although it made the same motion in State court after remand, it came forward with no reason why it had not earlier sought to raise the defense, although challenged by plaintiffs’ attorney to disclose why it had not previously done so. As for the argument advanced to us in Gulfs reply brief that assertion of the counterclaim was defensive "to be pursued only in the event that the foreign state [Gulf] is not entitled to sovereign immunity,” it is sufficient to note that the counterclaim was not pleaded conditionally; indeed, there was no mention whatsoever in the original answer of sovereign immunity.
We conclude that Gulf waived its defense of sovereign immunity by participating in and seeking affirmative benefit from the litigation, without reservation, and that the courts below correctly held that the defense as asserted in its amended answer is without merit.[9]
*460 III
Pointing to the Appellate Division’s conclusion that the action is not based upon a commercial activity carried on in the United States or an act performed outside the United States which causes a direct effect in the United States, Gulf argues that Congress could not have intended that a foreign sovereign be subject to the jurisdiction of United States courts on the basis of implied waiver regardless of its contacts with the United States and that international law prohibits assertion of prescriptive jurisdiction unsupported by reasonable links between the forum and the controversy. The latter part of the argument confuses jurisdiction to prescribe and jurisdiction to adjudicate (see, Restatement of Foreign Relations Law of United States [Revised], Tent Draft No. 2, Introductory Note, at 87-95, and § 401). As to the former, the legislative history makes clear that the statute embodies the minimum jurisdictional contacts and adequate notice required by due process (cf. International Shoe Co. v Washington, 326 US 310, 316) and that "each of the immunity provisions in the bill * * * requires some connection between the lawsuit and the United States, or an express or implied waiver by the foreign state of its immunity from jurisdiction” (emphasis supplied; HR Rep No. 1487, op. cit., at 13 [in 1976 US Code Cong & Ad News, at 6612]; see also, Hearings before the Subcommittee on Administrative Law and Governmental Relations of House Comm on Judiciary on HR 11315, 94th Cong, 2d Sess, at 28, 31). Both case law and secondary authorities agree that no more than minimum contact is required (Carey v National Oil Corp., 592 F2d 673; cf. Proyecfin de Venezuela v Banco Indus., 760 F2d 390, 394; see, Restatement of Foreign Relations Law of United States [Revised], op. cit. § 441 [2] [h]; Kahale & Vega, Immunity and Jurisdiction: Toward a Uniform Body of Law in Actions Against Foreign States, 18 Colum J Transnational L 211, 233). Neither the reasonableness requirement of international law nor the due process requirements of our constitutional law foreclose an action, though brought upon activities wholly unrelated to the United States, against a *461 foreign State agency doing business in the United States and which has waived its immunity and submitted to the jurisdiction of the court. Thereafter dismissal may be obtained only on forum non conveniens grounds (see, Verlinden B. V. v Central Bank of Nigeria, 461 US 480, 490, n 15) or on the merits.
Plaintiffs’ affidavit on Gulfs motion to amend and dismiss alleged that Gulf is engaged in substantial activity in the United States with offices and personnel in New York, Los Angeles and four other cities and annexed timetables and advertisements as proof. Gulfs affidavit in support of the motion to renew and reargue conceded that it employed approximately 25 persons in the United States and did not dispute that it was regularly carrying on business in New York. There are, therefore, sufficient contacts to meet both the requirements of international law and of due process (see, Banco Ambrosiano v Artoc Bank & Trust, 62 NY2d 65; Nemetsky v Banque De Developpement, 48 NY2d 962; Restatement of Foreign Relations Law of United States [Revised], op. cit. § 441 [2] [h]). That being so, and the forum non conveniens questions not being an issue before us, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, with costs to defendant Singapore Airlines, Ltd. against plaintiffs and with costs to plaintiffs against defendant Gulf Aviation, Ltd. Question certified answered in the affirmative.

. The parties have stipulated that the determination in the Aboujdid action will govern the similar El-Mani action as well. Therefore, only facts germane to the Aboujdid action are set forth.

. Such was the disposition stated in the opening sentence of the memorandum, but its concluding sentence was, "The motion for reargument is denied in all respects.”

. The effect of 28 USC §§ 1604 and 1605 (a) (1) is, by creating subject matter jurisdiction through waiver, to make "the defense of sovereign immunity * * * most akin to that of lack of jurisdiction over the person” (4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3211.10, at 32-56). The concept, though unusual, is not wholly foreign to New York jurisprudence (Matter of Rougeron, 17 NY2d 264, 271, cert denied 385 US 899).

. HR Rep No. 1487, at 18 (reprinted in 1976 US Code Cong & Ad News, at 6604; Sen Rep No. 1310 is identical). The quoted language appears at page 18 of the report, which also states at page 17 that "sovereign immunity is an affirmative defense which must be specially pleaded”. As the Supreme Court noted in Verlinden B. V. v Central Bank of Nigeria (461 US 480, 493-494, n 20), the latter statement is not entirely correct because "subject-matter jurisdiction turns on the existence of an exception to foreign sovereign immunity, 28 U.S.C. § 1330(a). Accordingly, even if the foreign state does not enter an appearance to assert an immunity defense, a * * * court still must determine that immunity is unavailable under the Act.”

. The House Report, supra, notes at page 12 that the act "is intended to preempt any other State or Federal law * * * for according immunity to foreign sovereigns * * * their agencies, and their instrumentalities.”

. Leave to amend is to be "freely given” (CPLR 3025 [b]) and generally does not involve the merits of the amended pleading (Herrick v Second Cuthouse, 64 NY2d 692; Edenwald Contr. Co. v City of New York, 60 NY2d *458 957; see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3025:6, p 477; C3025:ll, p 481).

. See also, Simmons, The Foreign Sovereign Immunities Act of 1976: Giving the Plaintiff His Day in Court, 46 Fordham L Rev 543, 553; Restatement of Foreign Relations Law of United States [Revised], Tent Draft No. 2 § 456 [1] [a] and [2] [c]; but see, Kane, Suing Foreign Sovereigns: A Procedural Compass, 34 Stan L Rev 385, 417).

. As we put it in an arbitration context, "[W]here the defendant’s participation in the lawsuit manifests an affirmative acceptance of the judicial forum, with whatever advantages it may offer in the particular case, his actions are then inconsistent with a later claim that only the arbitral forum is satisfactory” (De Sapio v Kohlmeyer, 35 NY2d 402, 405). Nor is section 1607 of the act protective of the counterclaim, as Gulf argues. That section deals only with the effect of a counterclaim against a foreign sovereign plaintiff or a foreign sovereign intervenor, not with a counterclaim such as Gulfs which, by seeking affirmative relief, asserts the jurisdiction of the court (see, Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, C3211:60, p 63).

. The conclusion thus reached makes it unnecessary for us to consider the effect as a waiver of Gulfs joining in Singapore’s forum non conveniens motion. But in light of plaintiffs’ argument on the cross appeal that Singapore, by failing to appeal from Special Term’s decision on reargument of its forum non conveniens motion, waived immunity, we note that the *460 Appellate Division’s contrary conclusion was within the discretion vested in it to determine what constitutes an implied waiver (Canadian Overseas Ores v Compania de Acero del Pacifico, 727 F2d 284), that Singapore’s reference to immunity was under the Federal cases discussed above a permissible method of protecting its right to raise the defense in its answer, and that Special Term’s determination of the motion for reargument was equivocal (see, n 1, supra).