**MARATHON INTERNATIONAL PETROLEUM SUPPLY CO., Plaintiff,**

**v.**

**I.T.I. SHIPPING, S.A., in personam, M/T RUTH M, her engines, tackle, apparel, etc., in rem, and Saybolt de Mexico, S.A., in personam, Defendants.**

**I.T.I. SHIPPING, S.A., in personam, M/T RUTH M., her engines, tackle, apparel, etc., in rem, and Saybolt de Mexico, S.A., in personam, Defendants and Third–Party Plaintiffs,**

**v.**

**Petroleos MEXICANOS, Third–Party Defendant.**

**No. 87 Civ. 3762 (RWS).**

United States District Court, S.D. New York.

Jan. 16, 1990.

nities Act of 1976 ("FSIA"). 28 U.S.C. § 1602 *et seq.* For the reasons set forth below, the motion is granted.

*Parties*

Pemex is a decentralized agency of the Mexican government charged with the exploration and development of Mexico's petroleum resources. It is a separate legal person having been created in 1938 by Special Decree of the Mexican Congress. It is not privately owned and has no shares of stock. Pemex is a "foreign state" within the definition of 28 U.S.C. § 1603(a)–(b) of the FSIA.

I.T.I. is a foreign corporate entity with a United States office and place of business at 1144 Avenue of the Americas, New York, New York, and is the registered owner of the M/T "Ruth M".

Saybolt de Mexico ("Saybolt") is a corporate entity existing under the laws of Mexico, with an office and principal place of business in Coatzacoalos, Mexico.

Marathon International Petroleum Supply Co. ("Marathon"), is the plaintiff in the underlying cause of action and a United States corporation.

*Facts*

On July 1, 1981, Marathon and Pemex entered into a contract for the sale of Maya crude oil. The contract was negotiated and signed in Mexico. The oil was to be loaded onto vessels nominated by Marathon at one of three Mexican ports. Under the contract, it was agreed that the base, sediment, and water ("BS & W") contained in the crude oil would be deducted from the total price. Title to the crude oil and risk of loss passed to the buyer at the time the oil passed the flange connection between the delivery hose and the vessel's cargo intake at the loading port in Mexico. The crude oil was to be tested for BS & W content at the loading port in Mexico. There was a Mexican choice-of-law provision in the contract. In the event of a

Walker & Corsa, New York City (Leroy S. Corsa, Kirk M.H. Lyons, Nicholas Kalfa, of counsel), for I.T.I. Shipping, S.A.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (Joseph D. Pizzurro, Michelle A. Rice, of counsel), for third-party defendant Petroleos Mexicanos.

SWEET, District Judge.

Third-party defendant Petroleos Mexicanos ("Pemex"), brings this action to dismiss the Third–Party Complaint of defendant and third-party plaintiff, I.T.I. Shipping, S.A. ("I.T.I.") for lack of jurisdiction to adjudicate[1] and personal jurisdiction over Pemex under the Foreign Sovereign Immu-

1. The phrase "jurisdiction to adjudicate" refers to "the competency of the court to hear a claim against a foreign sovereign by virtue of the commercial, as opposed to sovereign nature of the activity that gave rise to the claim" and is used instead of the term "subject matter juris-

diction," the latter referring to cases that are appropriate for federal court as opposed to state court jurisdiction. Note, Effects Jurisdiction Under the Foreign Sovereign Immunities Act and the Due Process Clause, 55 N.Y.U.L.Rev. 474, 480 n. 42 (1980).

dispute, the contract contained an arbitration clause which provided for arbitration before the International Chamber of Commerce in Paris.

A wholly-owned subsidiary of Marathon, Hancock Shipping Company, Ltd., entered into a tanker voyage charter party of the M/T "Ruth M" with I.T.I. to transport and deliver the cargo of oil purchased from Pemex from a Mexican East Coast port to a United States port.

Marathon retained Saybolt to sample and analyze the purchased crude oil to ensure that the BS & W content was deducted from the total price of the crude oil loaded on the Ruth M. Prior to departure of the Ruth M from Mexico, Saybolt conducted its analysis of the crude oil and advised Marathon that the BS & W content constituted 0.10% of the total amount of crude oil provided by Pemex. Upon the arrival and discharge of the cargo in the Louisiana Offshore Oil Port, a loss of 12,438 barrels of crude oil and a corresponding increase of 12,605 barrels in free water was noted by Marathon.

Marathon alleges damages for cargo loss. The basis for Marathon's suit is the failure of I.T.I. and the Ruth M to deliver the crude oil in the same good order as it was delivered at the port of shipment and the alleged negligence of Saybolt resulting in the inaccurate measurement and under-reporting of the BS & W content of the crude oil. I.T.I. contends that the only evidence as to the source of the alleged free water is that it originated from Pemex's shore facility at Rabon Grande, Mexico and that Pemex furnished free water rather than Maya crude oil to Marathon during the loading of the M/T Ruth M.

I.T.I. has impleaded Pemex alleging that any loss in cargo sustained by Marathon is solely the result of negligence, breach of express and implied warranties, and breach of contract by Pemex. Marathon, however, has not commenced an action against Pemex or commenced arbitration against Pemex pursuant to the terms of the crude oil supply contract. I.T.I. contends that Pemex is an indispensable party to this action and should Pemex's motion to dismiss be granted, then Marathon's complaint should be dismissed under Rule 19 of the Federal Rules of Civil Procedure for lack of an indispensable party.

Pemex's contacts with the United States consist of: (1) a listing of an office and telephone number on page 1214 of New York Telephone's Official White Pages for Manhattan 1988–1989; (2) advertisements in 1989 in the Journal of Commerce published in New York; (3) An office and telephone number at 3600 South Gessner, Suite 100, Houston, Texas 77063.

*Federal Sovereign Immunities Act*

The FSIA provides the exclusive basis for asserting jurisdiction over a foreign state in a United States court. *Argentine Republic v. Amerada Hess Shipping Corp.*, —— U.S. ——, 109 S.Ct. 683, 684, 102 L.Ed.2d 818 (1989). Pemex, as a decentralized agency of the Mexican Government, is within the definition of a "foreign State" under the FSIA. 28 U.S.C. §§ 1603(a) and (b).

The FSIA is structured to integrate the three issues of sovereign immunity, personal jurisdiction, and jurisdiction to adjudicate in all actions against foreign states. Under 28 U.S.C. § 1330(a), federal district courts have jurisdiction to adjudicate over an action against a foreign state only when that foreign state is not entitled to jurisdictional immunity under 28 U.S.C. §§ 1604–1607. Personal jurisdiction likewise is incorporated in the immunity provisions by 28 U.S.C. § 1330(b), which provides that personal jurisdiction can exist only if jurisdiction to adjudicate exists under § 1330(a) and process is served in accordance with the exclusive service provisions of 28 U.S.C. § 1608. Consequently, the claims against Pemex must be dismissed for lack of jurisdiction to adjudicate and personal jurisdiction if Pemex is entitled to jurisdictional immunity.

In 28 U.S.C. § 1604, Congress provided that all foreign states are "immune from the jurisdiction of the courts of the United States and of the States, except as provided in sections 1605 and 1607." The relevant jurisdiction issues in the present case turn upon the immunity exceptions listed in 28

U.S.C. § 1605. Specifically, I.T.I. contends that jurisdiction to adjudicate and personal jurisdiction exist over Pemex pursuant to the final clause of 28 U.S.C. § 1605(a)(2), the "direct effect" clause, when that clause is viewed in light of Rule 14(c).

28 U.S.C. § 1605(a)(2) provides in pertinent part that a foreign state is not entitled to immunity from jurisdiction where:

■ ... the action is based upon a commercial activity carried on in the United States by the foreign state; [2] or upon an act performed in the United States by the foreign state in connection with a commercial activity of the foreign state elsewhere; [3] or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a *direct effect* in the United States....

28 U.S.C. § 1605(a)(2) (emphasis added). The phrases "commercial activity" and "commercial activity carried on in the United States" are defined in the FSIA:

(d) A 'commercial' activity means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States.

28 U.S.C. §§ 1603(d) and (e).

Jurisdiction cannot be asserted over Pemex in this action under the first commercial activity exception of § 1605(a)(2). Insofar as Pemex is concerned, this action involves activity carried on wholly in Mexico. The negotiation and execution of the contract for sale of crude oil to Marathon occurred in Mexico; the crude oil was loaded onto a vessel by Pemex in Mexico; the first testing of the crude oil by Saybolt was performed in Mexico; and title to the crude oil and any risk of loss passed to Marathon while the vessel was docked in Mexico. Mexican law was to govern any dispute, and, if necessary, the dispute was to be presented to an arbitral body in Paris. The underlying action in this case is not based upon an activity Pemex conducted in the United States.

Similarly, the second clause of Section 1605(a)(2) does not provide jurisdiction. That clause requires that the cause of action be based upon an act of the foreign state committed in the United States in connection with a commercial activity of the foreign state elsewhere. I.T.I. does not allege the commission of any act by Pemex in the United States relevant to the contract at issue in the underlying cause of action.

*"Direct Effect" Clause & Rule 14(c)*

The dispute over jurisdiction centers around the third clause of 28 U.S.C. § 1605(a)(2). Pemex's involvement with the instant claim constitutes a "commercial activity" within the meaning of 28 U.S.C. § 1603(d). In drafting the FSIA, Congress intended that "commercial activity" encompass "import-export transactions involving sales to or purchases from concerns in the United States." H.Rep. No. 94–1487, 94th Cong., 2d Sess. 17, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6604, 6615 ("House Report"). *See Hatzlachh Supply Inc. v. Savannah Bank of Nigeria,* 649 F.Supp. 688, 690 (S.D.N.Y.1986).

Consequently, jurisdictional immunity rests on fulfillment of the second requirement of this clause, that the commercial activity cause a "direct effect" in the United States. *See International Housing Ltd. v. Rafidain Bank Iraq,* 893 F.2d 8, 10–11 (2d Cir.1989). I.T.I. has not based its third-party claim upon any relationship, contractual or otherwise, that it had with Pemex and therefore I.T.I. has not suffered injury in the United States because of Pemex's failure to perform some obligation in the United States. *See Texas Trading & Milling Corp. v. Federal Rep. of Nigeria,* 647 F.2d 300, 312 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Nor does financial injury to the third-party plaintiff, I.T.I., a

foreign corporation, constitute a direct effect in the United States. *See Carey v. National Oil Corp.*, 592 F.2d 673, 677 (2d Cir.1979).

Nevertheless, I.T.I. contends that the question of direct effect must be assessed in view of Rule 14(c) of the Federal Rules of Civil Procedure. Rule 14(c) states:

Admiralty Maritime Claims. When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. *In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defense to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.*

Fed.R.Civ.P. 14(c) (emphasis added).

I.T.I. contends that Marathon's claim is deemed to have been made directly against third-party defendant Pemex as well as I.T.I. and Saybolt by virtue of Rule 14(c). Consequently, I.T.I. claims that the financial loss suffered by Marathon constitutes the "direct effect" required by the third clause of § 1605(a)(2) of the FSIA to defeat jurisdictional immunity. Rule 14(c) allows this court to consider the existence of subject matter jurisdiction as if Marathon had brought the complaint against Pemex. *See Shipping Corporation of India, Ltd. v. American Bureau of Shipping v. Brodogradiliste I Trornica Diesel Motora–Split*, No. 84 Civ.1920, 1989 WL 97821 (S.D.N.Y. Aug. 17, 1989). Nevertheless, this procedural posture, for the reasons set forth below, does not confer subject matter jurisdiction.

In the seminal case in the Second Circuit, the Court recognized the difficulty present in the determination of what constitutes a "direct" effect "in the United States" for jurisdictional purposes under § 1605(a)(2). *See Texas Trading v. Federal Rep. of Nigeria*, 647 F.2d 300. This Circuit has held that a breach of contract as well as a tort can cause a direct effect within the meaning and purpose of § 1605(a)(2). *Carey v. National Oil Corp.*, 592 at 676–77. *See Schmidt v. Polish People's Republic*, 579 F.Supp. 23, 27 (S.D.N.Y.1984), *aff'd*, 742 F.2d 67 (2d Cir.1984).

In *Texas Trading*, the Court held that the determination of whether there is a direct effect in the United States involves an inquiry as to "whether the corporation [Marathon] has suffered a 'direct' financial loss." 647 F.2d at 312. In the same case, however, the Second Circuit warned that "no rigid parsing of § 1605(a)(2) should lose sight of [Congress's] purpose," namely whether an American court should hear the case. *Texas Trading*, 647 F.2d at 313.

Here, I.T.I., a foreign corporation, through Rule 14(c) asserts on behalf of Marathon, an American corporation, that Marathon has suffered a financial loss in the United States, the result of the loss of 12,438 barrels of Maya crude oil. I.T.I. contends that Marathon's loss constitutes a direct effect for purposes of § 1605 and that therefore this court has subject matter jurisdiction over Pemex. Regardless of whether Marathon's loss constitutes a direct effect for purposes of § 1605(a)(2), the Second Circuit's warning and the policy behind effects jurisdiction counsels against the use of Rule 14(c) to confer subject matter jurisdiction over a party that could not otherwise be brought into an American Court.

The FSIA is designed to define the conditions under which one sovereign state may assert jurisdiction over another. The direct effect clause of the FSIA is designed to provide a forum for disputes between United States residents or businesses over commercial activities that were conducted elsewhere. As one commentator has stated:

Effects jurisdiction derives from a state's interest in protecting those within its borders and in governing events within its borders. Thus, to determine whether a corporation has sustained a direct effect within a particular state a court must inquire whether the corporation, by its activity vis-a-vis the potential forum state, sufficiently implicates that state's interest in protecting persons within its territory.

*L'Europeenne De Banque v. La Republica De Venezuela,* 700 F.Supp. 114, 121 (S.D.N.Y.1988) (quoting Note, *Effects Jurisdiction Under the Foreign Sovereign Immunities Act and the Due Process Clause,* 55 N.Y.U.L.Rev. 474, 512 (1980) (footnote omitted).

In the present case, Marathon agreed by contract to resolve all disputes with Pemex through arbitration in Paris. Here the American court has no interest to protect. Neither an American party nor an American interest invites the court to assert jurisdiction. Even if Marathon could have asserted that financial loss alone constituted a direct effect for purposes of satisfying the exceptions to jurisdictional immunity under the FSIA, the policy behind the immunity exception is not furthered by allowing I.T.I., a foreign corporation, to use Rule 14(c) to assert jurisdiction on behalf of a corporation that did not seek recourse in an American court, but indeed, contracted away such recourse.

In the absence of jurisdiction to adjudicate there is no need to reach the question of personal jurisdiction.

*Conclusion*

For the reasons set forth above, Pemex's motion to dismiss the third-party complaint for lack of jurisdiction to adjudicate and personal jurisdiction under the FSIA is granted. Absent a motion pending with respect to I.T.I.'s Rule 19 claims, we do not reach the issue.

It is so ordered.