[612 NYS2d 407]

New Hampshire Insurance Company, Plaintiff, v Wellesley Capital Partners, Inc., Defendant and Third-Party Plaintiff-Appellant. Corporacion Dominicana de Electricidad et al., Third-Party Defendants-Respondents, et al., Third-Party Defendant.

First Department, May 26, 1994

## APPEARANCES OF COUNSEL

*John E. Considine,* New York City, for third-party plaintiff-appellant.

*George Weisz* of counsel, New York City *(Neil Whoriskey* with him on the brief; *Cleary, Gottlieb, Steen, & Hamilton,* attorneys), for third-party defendants-respondents.

### OPINION OF THE COURT

RUBIN, J.

In this action, third-party plaintiff Wellesley Capital Partners seeks to require the Dominican Republic and its State-owned electric utility to answer before our courts for an asserted breach of an agreement to pay a sum of money in settlement of a debt. In their first appearance in this action, third-party defendants Corporacion Dominicana de Electrici-

dad (CDE) and the Dominican Republic (collectively, the foreign defendants) asserted their immunity under the Foreign Sovereign Immunities Act (28 USC § 1330; FSIA) in opposition to a motion by third-party plaintiff to enter judgment fixing the amount of their liability. Thus, the immunity issue was timely raised in their first responsive pleading *(Aboujdid v Singapore Airlines,* 67 NY2d 450).

Third-party defendant CDE also claimed that service of the third-party summons and complaint was not properly made upon it for failure to comply with the provisions of 28 USC § 1608 (b), and the Dominican Republic claimed invalid service for failure to file a signed receipt of service upon it with the court pursuant to 28 USC § 1608 (a) (3). Supreme Court invalidated service upon CDE and upheld service on the Dominican Republic, which has not appealed from this ruling.

■ At issue on this appeal is whether the foreign defendants are entitled to sovereign immunity or whether, as third-party plaintiff Wellesley maintains, they engaged in "commercial activity" in the United States so as to render them amenable to suit pursuant to 28 USC § 1605 (a) (2) (FSIA) *(Verlinden B. V. v Central Bank,* 461 US 480). The statute provides:

"(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case * * *

"(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

"Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act * * * determined by reference to [its] nature * * * rather than by reference to its purpose" (28 USC § 1603 [d]).

Wellesley Capital Partners maintains that the exercise of jurisdiction by the courts of this State over third-party defendants may be predicated upon an act undertaken in furtherance of their commercial activity outside the United States which had a direct economic effect on Wellesley in this country. In particular, Wellesley alleges that the foreign defendants breached an agreement to pay it the sum of $3,577,839.59, causing it to default in its obligation to perform

a contract with plaintiff New Hampshire Insurance Company. The resulting loss to Wellesley is asserted to be a direct consequence, within the United States, of the foreign defendants' commercial activities elsewhere so as to require them to answer before the courts of this State *(Argentina v Weltover, Inc.,* 504 US —, —, 112 S Ct 2160, 2164 [default by foreign sovereign on obligations due and payable in the United States]).

Supreme Court found that no agreement is reflected in the numerous communications between Wellesley and officials of the Dominican Republic and CDE, the State-owned electric utility. On appeal, Wellesley argues that this finding "was premature and improperly invaded the jury's function."

As noted in *First Fid. Bank v Governor of Antigua & Barbuda-Permanent Mission* (877 F2d 189, 195-196 [2d Cir]), it may be necessary for a court to consider the merits of a case in order to resolve the threshold jurisdictional question under the FSIA. Furthermore, it is well settled in this State that whether writings exchanged by the parties constitute a contract is a question of law for determination by the court *(Poel v Brunswick-Balke-Collender Co.,* 216 NY 310, 313, *rearg denied* 216 NY 771; *Central Fed. Sav. v National Westminster Bank,* 176 AD2d 131; *see also, Gram v Mutual Life Ins. Co.,* 300 NY 375, 390 [1950]). Here, as in *Poel (supra),* the writings asserted to establish the formation of a contract are set forth in the record. As this Court noted in *Consolidated Edison Co. v General Elec. Co.* (161 AD2d 428, 429), "the meaning of the writings is plain, and they are binding upon the parties." The issue is therefore one of law and was appropriately decided summarily (161 AD2d, *supra,* at 430, citing *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291). In the matter under review, the question of the parties' intention with respect to the settlement of their dispute is determinable from writings contained in the record, and Supreme Court was entirely correct to make a ruling on this issue.

The underlying transaction in this matter and the commercial activity undertaken by CDE do not involve dealings with a United States company, but with FIAT T.T.G. S.p.A., an Italian corporation. In 1980 and 1983, CDE issued 16 bills of exchange to FIAT in connection with the purchase of certain electrical equipment. No payment was ever made on these notes, and the amount of indebtedness on December 30, 1991, including accumulated interest, was $5,830,312.99. Allegedly, all obligations of CDE are guaranteed by the Dominican

Republic. Political risk insurance with respect to the notes was issued to FIAT by plaintiff New Hampshire Insurance Company. Upon default by third-party defendants, FIAT demanded and received payment from New Hampshire, which became subrogated to FIAT's right to collect on the instruments.

Third-party plaintiff Wellesley became involved in this matter when New Hampshire Insurance enlisted it to seek payment on the notes. Pursuant to its contract with the insurance company, Wellesley was to purchase the notes from New Hampshire at a discounted price on or before June 6, 1991 or, in the event of its failure to meet that deadline, to pay full face value for the instruments. Wellesley, as contract vendee, undertook to obtain payment from CDE and contends that negotiations, which commenced in April 1989, resulted in a settlement agreement by fall, under which CDE agreed to pay Wellesley $3,577,839.59 in full satisfaction of its obligation on the notes.

To establish the asserted agreement, Wellesley does not identify any single document but instead relies upon a series of communications with the foreign defendants. Its moving papers state that, in response to its offer to sell the notes to CDE at a discounted price, CDE made a counteroffer to purchase the instruments for $3,577,839.59, on condition that this amount would be payable over a four-and-one-half-year period. Wellesley avers that, by letter dated September 18, 1989, it "accepted CDE's counter-offer as to the purchase price" but informed CDE that "no unsecured payments are acceptable." It therefore required payment to be made by means of an "irrevocable letter of credit, to be confirmed by the Bank of New York, with tenor, terms and conditions acceptable to all parties." In response to this purported "acceptance", CDE advised Wellesley that "we are proceeding to treat this matter with our monetary authorities, in order to obtain the appropriate authorization."

The terms of the letter of credit were sent to Wellesley with a letter from CDE dated February 7, 1990. These terms were tentatively ratified by CDE in a subsequent letter dated March 15, advising, "We extend this authorization subject to * * * the Honorable Board of Directors of this Corporation authorizing the transaction * * * at its regular session, next Thursday the 22nd of this month." The resolution passed on that occasion recites that the Secretary for Technical Affairs, together with the Reserve Bank "shall conclude the negotia-

tion" and that "it is in the best interest to *procure* a negotiated solution" (emphasis added). A December 19 letter from the Secretary to the Governor of the Central Bank mentions the need "for the Monetary Fund to authorize the Reserve Bank to retain dollars, in an accumulating fund" necessary to obtain the letter of credit, issuance of which had received the approval of the President of the Dominican Republic in late November. A letter of June 10, 1991 from CDE to the Secretary of State for Finance states, "This Corporation has shown interest in resolving the problem of the debt * * * but its lack of liquidity has prevented it from honoring this commitment." The letter goes on to solicit a credit from the Reserve Bank in the amount of the proposed settlement. Meanwhile, a letter from Wellesley to CDE dated June 11 discounts "any need for further discussions, since the terms of a compromise settlement have been clearly agreed upon and accepted by all the parties."

In fact, Wellesley's purported acceptance of September 18, 1989, which is at variance with the terms of CDE's offer, is nothing more than a counteroffer. It has long been the law, in this jurisdiction as elsewhere, that a counteroffer operates as a rejection and termination of the offer *(Minneapolis Ry. v Columbus Rolling Mill,* 119 US 149 [1886]; *Sidney Glass Works v Barnes & Co.,* 86 Hun 374, 377 [1895]; *see also, Lambert v Kysar,* 983 F2d 1110, 1115 [1st Cir 1993]; *Gram v Mutual Life Ins. Co.,* 300 NY, *supra,* at 382-383 [1950]; Restatement [Second] of Contracts § 59). Following Wellesley's rejection of its offer, CDE was free to accept the counteroffer proposed by Wellesley or to reject it and make a further offer of its own *(Meinig Co. v United States Fastener Co.,* 200 App Div 522, 528). Nothing in the subsequent correspondence among the parties manifests assent to the counteroffer. The letters from the foreign defendants indicate only that approvals from a number of governmental agencies of the Dominican Republic were required before the proposal could be adopted. The requisite approvals were not all forthcoming by the date designated for Wellesley to consummate its purchase of the notes from plaintiff New Hampshire Insurance Company. As a result, Wellesley became indebted to plaintiff for the face amount of the notes, an obligation which it has still not paid.

The application of principles of contract law to the communications between the parties demonstrates the lack of agreement on the terms of the purported "compromise settlement" relied upon by Wellesley. None of the documents in the record

before this Court remotely expresses a final settlement of the dispute. Even ignoring the capacity of the signing official to bind the Dominican corporation or the government of the Dominican Republic, the content of the various communications, including those exchanged between Dominican agencies, is conditional and equivocal. The correspondence reflects only ongoing negotiations carried out in the attempt to reach a settlement.

While Wellesley effectively treats both foreign defendants as a single entity, it is evident that any obligation of the Dominican Republic on the indebtedness represented by the notes arises from its alleged status as guarantor. Wellesley has not represented that the Dominican Republic consented to settle its obligation on the notes; this assertion is made solely with respect to CDE. Therefore, even crediting third-party plaintiff's allegation of the breach of a compromise settlement and ignoring the contractual and statutory defects in the alleged settlement, no commercial activity is asserted to have been engaged in by the Dominican Republic so as to bring it within the operation of 28 USC § 1605 (a) (2). Wellesley argues disingenuously that *Argentina v Weltover, Inc. (supra,* 504 US —, 112 S Ct 2160) renders the government's failure to issue a letter of credit "commercial activity" within the United States. But *Weltover* holds only that failure to pay an obligation documented by an instrument payable in the United States comes within the commercial activity provision of the FSIA. Having concededly omitted to issue the letter of credit, to be confirmed by the Bank of New York, there exists no instrument payable in this country so as to constitute commercial activity within the contemplation of the FSIA or the long-arm statute of this State (CPLR 302 [a] [1]; *compare, Chemco Intl. Leasing v Meridian Eng'g,* 590 F Supp 539 [SD NY]).

Even if this Court were to decide the question of subject matter jurisdiction under FSIA in favor of third-party plaintiff, the foreign defendants' contacts with the United States are insufficient to support the exercise of personal jurisdiction by our courts *(Hanson v Denckla,* 357 US 235) without offending " 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington,* 326 US 310, 316; *Aboujdid v Singapore Airlines, supra,* at 460). The cases relied upon by Wellesley in which jurisdiction has been upheld involve instances where a foreign defendant has availed itself of the privilege of conducting operations under the

benefit and protection of United States law *(Texas Trading & Milling Corp. v Federal Republic of Nigeria,* 647 F2d 300 [2d Cir], *cert denied* 454 US 1148 [commercial relationship with New York bank]; *Hatzlachh Supply v Savannah Bank,* 649 F Supp 688 [SD NY] [use of the banking system]; *Crimson Semiconductor v Electronum,* 629 F Supp 903 [SD NY] [course of dealing with the plaintiff]).

There is no question that negotiations undertaken by defendants outside the United States are not regarded as activities conducted under our laws *(L'Europeenne de Banque v La Republica de Venezuela,* 700 F Supp 114, 125 [SD NY]). Moreover, this Court cannot overlook the fact that the particular economic advantage sought to be gained from the commercial activity engaged in by CDE concerned the purchase of equipment from FIAT under the benefit of Italian law. Wellesley's involvement in this transaction was after the fact, at the behest of plaintiff and not as the consequence of any action on the part of the foreign defendants. Thus, the effect that the commercial activity, undertaken by third-party defendants in Italy, may be said to have had on the interests of third-party plaintiff Wellesley is, at best, remote. The statutory prerequisite for a "direct effect" is lacking, and the third-party defendants are beyond the purview of the jurisdiction conferred by the FSIA (28 USC § 1605 [a] [2]).

█ Finally, it is conceded that CDE did not receive proper service as "an agency or instrumentality" of the Dominican Republic but was erroneously served as a "political subdivision" thereof. While Wellesley offers precedent for overlooking technical service requirements when a defendant receives actual knowledge of the lawsuit *(e.g., Obenchain Corp. v Corporation Nacionale de Inversiones,* 656 F Supp 435, 437 [WD Pa], *affd in part and reversed in part* 898 F2d 142 [3d Cir]), it remains the law in this forum that compliance with statutory service requirements is not obviated by a defendant's actual receipt of service *(McDonald v Ames Supply Co.,* 22 NY2d 111).

Accordingly, the order of the Supreme Court, New York County (Walter M. Schackman, J.), entered March 12, 1993 which, (1) denied the motion of defendant and third-party plaintiff Wellesley Capital Partners, Inc. to modify two prior orders, respectively dated March 2, 1992 and May 18, 1992, to fix the amount of the default judgment and to enter a default judgment against third-party defendant Dominican Republic, (2) granted the cross motion of third-party defendant-respon-

dent Corporacion Dominicana de Electricidad to vacate the default judgment against it granted by order entered June 4, 1992 and, (3) found that the third-party summons and complaint were not properly served upon Corporacion Dominicana de Electricidad pursuant to 28 USC § 1608 (b), should be modified, on the law, to the extent of dismissing the third-party summons and complaint for lack of jurisdiction over third-party defendants-respondents and, except as so modified, affirmed, without costs.

SULLIVAN, J. P., WALLACH and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered March 12, 1993, modified, on the law, to the extent of dismissing the third-party summons and complaint for lack of jurisdiction over third-party defendants-respondents and, except as so modified, affirmed, without costs.