OPINION OF THE COURT
David B. Saxe, J.
The question posed here is whether this court has jurisdiction over a banking organ of the new Russian Federation to enforce that entity’s payment obligation to a United States corporation.
In June 1987, plaintiff, a New York company, became the assignee of all the rights of Primary International Inc. (Primary), also a New York company, to 10 bills of exchange due semiannually from October 30, 1987 through April 30, 1992, payable at the Bank for Foreign Trade of the USSR (the Trade Bank), that Primary had received as part payment for a commercial transaction from V/O Avtoexport, a Moscow importer, and which were guaranteed by a letter of guarantee from the Trade Bank dated February 10, 1987. By decree of the USSR government, the Trade Bank was reorganized into the Bank for Foreign Economic Affairs of the USSR (defendant) in December 1987. The first nine bills were presented by plaintiff to the Trade Bank and defendant as each became due and were duly paid. When plaintiff presented the last bill, however, defendant replied with the following electronic message: "[W]e will effect payment as soon as we receive adequate funds for this purpose from the Central Bank of the Russian Federation. We hope that our position will meet your kind understanding.” Apparently the funds never materialized.
Plaintiff now moves for summary judgment in lieu of complaint pursuant to CPLR 3213 seeking payment of the promissory note/bill of exchange for $78,789.04, secured by the letter of guarantee.
Defendant cross-moves to dismiss the action with prejudice for lack of jurisdiction pursuant to CPLR 2215, 3211 and 3212.
In response to plaintiff’s claim, defendant merely asserts that it is immune by virtue of the Foreign Sovereign Immunities Act of 1976 (FSIA) (28 USC § 1602 et seq.). This contention is supported by the affidavit of Oleg Enoukov, defendant’s New York representative, who states that defendant "is a banking organization existing pursuant to the laws of the Russian Federation * * * [which has always] been wholly-owned by the Russian Federation or the U.S.S.R. or government-owned entities * * * [Defendant] functions and exists as a separate entity *296 from the Russian Federation * * * [but] serves as an organ of the Russian Federation.”
The FSIA, enacted in 1976, created certain exceptions to the absolute immunity accorded to foreign sovereigns by the courts prior thereto (see, 28 USC § 1602; see, e.g., Carl Marks & Co. v Union of Soviet Socialist Republics, 841 F2d 26 [2d Cir], cert denied 487 US 1219; Oliner v Czechoslovak Socialist Republic, 715 F Supp 1228 [SD NY]). One of those exceptions, commonly referred to as the "commercial activity exception”, is the one plaintiff is evoking in this case. The commercial activity exception comprises three possible scenarios. The third of these, a claim against a foreign entity based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere * * * that * * * causes a direct effect in the United States” (28 USC § 1605 [a] [2]) is the one at issue here.
For a court to obtain jurisdiction through this clause, three elements must be shown: (i) an "agen[t] or instrumentality of a foreign state” (as defined in 28 USC § 1603 [a], [b]) must be involved; (ii) the transaction at issue must qualify as commercial activity (as defined in 28 USC § 1603 [d]), and (iii) the act complained of must have a direct effect in the United States.
In a recent unrelated Federal case involving this defendant’s issuance of a letter of credit, the court deemed the first two prongs of the test to have been satisfied, but ruled the third prong, whether the transaction affected the United States, must be determined on a case-by-case basis (Reed Intil. Trading Corp. v Donau Bank AG., 866 F Supp 750, 754). This court agrees with that determination. The test of whether the FSIA is applicable to a foreign entity is whether that entity’s core functions are predominantly governmental or commercial (Republic of Argentina v Weltover, Inc., 504 US 607, 614; Transaero, Inc. v La Fuerza Aerea Boliviana, 30 F3d 148, cert denied 513 US 1150). The issuance of the bills of exchange at issue here clearly constitutes commercial activity under the FSIA (see, 28 USC § 1603 [d]; Shapiro v Republic of Bolivia, 930 F2d 1013, 1018-1019 [2d Cir]), since the Trade Bank essentially functioned as the guarantor of an ordinary commercial transaction (New Hampshire Ins. Co. v Wellesley Capital Partners, 200 AD2d 143,149 [1st Dept]; see generally, De Sanchez v Banco Central de Nicaragua, 770 F2d 1385, 1391-1392 [5th Cir]).
The source of controversy here is the third element of the test: the requirement that defendant’s failure to honor its bill *297 of exchange "[cause] a direct effect in the United States.” Determining whether this requirement is met has been described as "a mythic quest” (Crimson Semiconductor v Electronum, 629 F Supp 903, 906 [SD NY]) and " 'an enterprise fraught with artifice’ ” (L’Europeenne de Banque v La Republica de Venezuela, 700 F Supp 114, 121 [SD NY]). Since the statute does not spell out the standard, courts have resorted to analogies to such things as Federal effects jurisdiction (Marathon Intl. Petroleum Supply Co. v I.T.I. Shipping, 728 F Supp 1027,1032, rearg denied 740 F Supp 984) and in personam jurisdiction (see, e.g., Carey v National Oil Corp., 592 F2d 673, 677), and the "act of state” doctrine, which embodies public policy concerns of furthering the United States’ — and New York’s — status as a world financial leader (Weltover, Inc. v Republic of Argentina, 941 F2d 145, 153 [2d Cir], affd 504 US 607, supra).
Causing "a direct effect in the United States” calls for more than the mere tangential connection required under 28 USC § 1605 (a) (2) when the offending act is performed within the United States (Drexel Burnham Lambert Group v Committee of Receivers for A. W. Galadari, 12 F3d 317, 330 [2d Cir], cert denied 511 US 1069), and more than "[a] purely trivial [effect]” (Republic of Argentina v Weltover, Inc., supra, at 618), but need not rise to the "substantial and foreseeable” standard suggested by FSIA’s legislative history (supra; for prior standards used, see, International Hous. v Rafidain Bank Iraq, 893 F2d 8, 11, n 2 [2d Cir]). There is no easy formula. In some cases, "it may [even] be necessary for a court to consider the merits of a case in order to resolve the threshold jurisdictional question under the FSIA” (New Hampshire Ins. Co. v Wellesley Capital Partners, supra, at 146).
In Reed (supra, 866 F Supp, at 754-755), the court found a direct effect on the United States because the letters of credit issued by defendant by their very terms made the involvement of American banks within the United States an integral part of the transactions. This is consistent with the line of decisions which hold that a foreign sovereign’s default on the contractual obligation to pay a debt in the United States constitutes direct effect (for roundup of cases, see, Crimson Semiconductor v Electronum, supra, at 906-907; but compare, International Hous. v Rafidain Bank Iraq, supra, at 12 [incidental direction to make payment to plaintiff’s account at a United States bank is insufficient]). But payment need not occur within the United States for the court to gain jurisdiction; indeed, "[placing undue *298 weight upon the * * * locus of actual payment would constitute the precise sort of myopic analysis * * * counseled against” (Walpex Trading Co. v Yacimientos Petroliferos Fiscales Bolivanos, 712 F Supp 383, 390 [SD NY], rearg denied 1989 WL 67239 [SD NY], June 18, 1989, Leisure, J.).
Before the United States Supreme Court did away with the requirement that the effect in this country be "substantial and foreseeable” (Republic of Argentina v Weltover, Inc., supra, at 618), mere financial loss abroad to a United States plaintiff was not deemed sufficient to confer jurisdiction over a foreign sovereign (see, e.g., Gregorian v Izvestia, 871 F2d 1515, 1527 [9th Cir], cert denied 493 US 891), although even then the seminal case in this circuit explicitly left it an open question (Texas Trading & Milling Corp. v Federal Republic of Nigeria, 647 F2d 300, 312, cert denied 454 US 1148). Deprived of its underpinnings, that rule has now gone by the wayside.
In the wake of Argentina v Weltover, Inc. (supra), when the aggrieved party is a domestic corporation, financial loss suffered by that party is deemed a sufficiently direct effect on the United States since a corporation’s loss, no matter where it occurs, is felt in its place of incorporation (AMPAC Group v Republic of Honduras, 797 F Supp 973, 977 [SD Fla], affd 40 F3d 389; compare, Antares Aircraft v Federal Republic of Nigeria, 999 F2d 33, 36 [financial loss of an individual or a partnership is insufficient]; for general discussion of issue, see, Leacock, The Joy of Access to the Zone of Inhibition: Republic of Argentina v. Weltover, Inc. and the Commercial Activity Exception under the Foreign Sovereign Immunities Act of 1976, 5 Minn J Global Trade 81, 117-118). That is particularly true where the domestic corporation was the beneficiary of a contract (Crimson Semiconductor v Electronum, supra, at 906-907 [failure to meet contractual obligation to deliver goods to a domestic company outside of the United States directly affected the United States because the domestic corporation suffered a financial loss and the benefit of its contractual bargain]).
Based on the foregoing, it is clear that if Primary had not transferred its rights to plaintiff, it would be able to assert FSIA jurisdiction over defendant. The final question is whether plaintiff, Primary’s assignee but a stranger to Primary’s underlying contractual transactions, may similarly obtain jurisdiction.
The question of whether a successor which is a stranger to the underlying transaction has the same rights to assert FSIA jurisdiction as the original party has thus far arisen mainly in *299 cases involving foreign companies. A foreign corporation seeking to enforce the rights of a domestic corporation may not obtain jurisdiction over a foreign sovereign pursuant to 28 USC § 1605 (a) (2) when the domestic corporation chose to not seek the recourse of American courts (Marathon Intl. Petroleum Supply Co. v I.T.I. Shipping, 728 F Supp 1027, supra). Neither is there jurisdiction in the converse situation, where the domestic subrogor of a foreign company was a stranger to the transactions between the foreign company and the foreign sovereign debtor (New Hampshire Ins. Co. v Wellesley Capital Partners, supra, at 149). However, this does not mean that a foreign plaintiff is always foreclosed from bringing suit against a foreign sovereign in the United States. Finding that "a bright-line rule limiting the situs of an effect to the foreign plaintiffs domicile, place of incorporation, or principal place of business is too facile an interpretation of the FSIA” (Weltover, Inc. v Republic of Argentina, 941 F2d, at 152, supra), courts will look at the substance of the transaction to see whether it has an effect on the United States (see, e.g., supra; L’Europeenne de Banque v La Republica de Venezuela, 700 F Supp 114, supra [contractual duty to pay debt in United States even to a foreign plaintiff suffices to cause effect in United States]).
The question of whether the domestic subrogee or assignee of a domestic company may show a direct effect on the United States so as to obtain jurisdiction under the FSIA over a foreign sovereign debtor because it suffered a financial loss has been previously raised but not answered (New Hampshire Ins. Co. v Wellesley Capital Partners, 200 AD2d, at 145-146 [1st Dept], supra [a case in which the sovereign’s original creditor was a foreign company and the assignee alleged the foreign sovereign’s default in turn caused it to default in unrelated obligations to a domestic company in the United States]).
In this case, this court sees no reason to depart from the traditional legal principle that an assignee stands in the shoes of the assignor as against a debtor (see, e.g., Advance Trading Corp. v Nydegger & Co., 127 NYS2d 800, 802), since both Primary and plaintiff are New York corporations. Furthermore, defendant has a presence in this country, and clearly had reason to expect that plaintiff’s loss would be felt in this State since it addressed various communications to plaintiff in New York,
, As to the substance of plaintiff’s motion for summary judgment in lieu of complaint, which defendant does not oppose on nonjurisdictional grounds, plaintiff has proven its entitlement *300 to payment of the last bill of exchange, an instrument for the payment of money only, and defendant’s acknowledgment of its obligation to pay that bill.
Accordingly, plaintiff’s motion is granted and defendant’s cross motion is denied. The clerk is directed to enter judgment in favor of plaintiff against defendant in the amount of $78,789.04, together with interest to be computed by the clerk and costs and disbursements to be taxed by the clerk upon submission of an appropriate bill of costs.